**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

**ALEX WRIGHT,**

      **Plaintiff,**

  **- against -**

**NEW MODA, LLC,**

      **Defendant.**
_____

      **17cv9737 (JGK)**


      <u>**MEMORANDUM OPINION &**</u>
      <u>**ORDER**</u>

**JOHN G. KOELTL, District Judge:**

  The plaintiff, Alex B. Wright, originally represented by counsel but now proceeding <u>pro se</u>, brought this action against the defendant, New Moda, LLC, for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114-1116; unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement and unfair competition under New York State law; and unjust enrichment under New York State law. The plaintiff's claims all arise from the defendant's use of the defendant's mark, which the plaintiff alleges infringes upon the plaintiff's trademarks. The defendant now moves for summary judgment, and its motion is unopposed.

  For the reasons explained below, the defendant's motion for summary judgment is **granted**.

**I.**

  The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the

1

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from

2

any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

Where, as in this case, a pro se litigant is involved, although the same standards for dismissal applies, a court should give the pro se litigant special latitude in responding to a summary judgment motion. In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See McPherson v. Coombe, 174 F.3d 276, 281 (2d Cir. 1999).

Where "a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). The district court may not grant an unopposed motion for summary judgment "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). "[I]n

determining whether the moving party has met this burden of
showing the absence of a genuine issue for trial, the district
court may not rely solely on the statement of undisputed facts
contained in the moving party's Rule 56.1 statement. It must be
satisfied that the citation to evidence in the record supports
the assertion." Vt. Teddy Bear, 373 F.3d at 244.

The Court originally set September 30, 2019 as the date for
the plaintiff to respond to the defendant's motion for summary
judgment. After the plaintiff failed to respond by September 30,
2019, the Court directed the defendant to comply with Local
Civil Rule 56.2 and to provide the plaintiff with the necessary
notice and documents to respond to the defendant's motion for
summary judgment. In its order, the Court advised that if the
plaintiff failed to respond to the motion, the Court would
decide the motion on the papers already submitted. The Court
then set a new deadline for the plaintiff to respond to the
motion, namely 21 days after the plaintiff was served with the
necessary notice under Local Civil Rule 56.2. The defendant
subsequently filed an affidavit of service indicating that the
plaintiff was served on November 13, 2019 with the Local Civil
Rule 56.2 notice, the summary judgment papers, and this Court's
order. The plaintiff has failed to respond to the motion for
summary judgment, and the Court therefore proceeds to decide the
motion based on the defendant's papers.

## II.

The following facts are undisputed unless otherwise indicated.[1]

The plaintiff is the owner of multiple registered trademarks that consist of the words "Defend Brooklyn." Compl. ¶¶ 12-15.

The plaintiff's first trademark (the "Defend Brooklyn Character Mark") is a standard character mark consisting of the words "DEFEND BROOKLYN" without claim to any particular font, style, size, or color. Compl., Ex. A. The plaintiff applied for registration of this character mark with the United States Patent and Trademark Office ("USPTO") on June 4, 2004, and the USPTO issued the registration on October 4, 2005 with a registration number of 3,004,096. Id.

The plaintiff's second trademark (the "Defend Brooklyn Rifle Mark") is for the following mark:

---

[1] Because the plaintiff has not responded to the defendant's motion and has not responded to the defendant's Local Civil Rule 56.1 Statement, the assertions made in the defendant's Rule 56.1 statement, where supported by evidence in the record, are deemed admitted for purposes of this motion for summary judgment. See Taylor & Fulton Packing, LLC v. Marco Int'l Foods, No. 09-cv-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011).



The mark consists of the literal elements "DEFEND BROOKLYN" written in a stylized form wherein the letter "DEFEND" is at the top in curved format, letter "BROOKLYN" is at the bottom and between the literal element rifle image is placed. Compl., Ex. B. The original owner of this trademark, 3XN Limited Liability Company ("3XN"), filed an application on March 14, 2014, and the USPTO issued the registration on October 7, 2014 with a registration number of 4,617,558. Compl. Ex. B. The plaintiff owns the mark by virtue of an assignment from 3XN. Def.'s 56.1 Stmt. ¶ 11.

The plaintiff's third trademark (the "Defend Brooklyn Shield Mark") consists of the following design plus words mark:



This mark consists of the words "DEFEND BROOKLYN" inside a shield with a horizontal line separating "DEFEND" and "BROOKLYN." Compl., Ex. C. The plaintiff applied for registration of this mark on October 28, 2014, and the USPTO issued the registration on June 16, 2015 with a registration number of 4,755,821.

The plaintiff alleges that he has been selling "headwear, t-shirts, sweaters, hooded sweatshirts, jackets and other clothing items" under the "DEFEND BROOKLYN" brand name and using the Defend Brooklyn Rifle Mark since 1996. Compl. ¶¶ 7-10. The plaintiff is unable to identify the present amount of sales bearing the plaintiff's marks and is unable to provide documentation attesting to the plaintiff's sales. Def.'s 56.1 Stmt. ¶¶ 14-15. The plaintiff is unable to report his sales during the first year of the mark's purported use and is unable to provide any evidence about sales, advertising, or purchase orders during the years between 2015 and 2018. Id. ¶¶ 17-32; Ecoff Decl. Ex. C.

Freedom Limited Liability Company France ("Freedom") was the registrant of the following design plus words mark (the "Defend Paris Rifle Mark"):



Freedom filed an application for the mark on March 6, 2014. Freedom claimed a priority filing date of November 26, 2013 under 15 U.S.C. § 1126(d) because it had already filed for the same trademark in France on that date.[2] See USPTO, TSDR Case Viewer, Case ID 86221288, Documents – TEAS Plus New Application, http://tsdr.uspto.gov (last visited on May 25, 2020). The USPTO issued the registration on January 26, 2016 with a registration number of 4,891,175 and granted the registrant a priority date of November 26, 2013. The mark was registered to be used in connection with "bottoms, headwear, hooded sweatshirts, shirts, sweaters, sweatshirts, t-shirts, and tops, all of the aforementioned products being of French origin or made in France." Ecoff Decl. Ex. A.

---

[2] Section 44(d) of the Lanham Act provides a right of priority in the U.S. for foreign trademark owners whose country of origin is a party to a trademark treaty to which the United States is also a party. See 15 U.S.C. § 1126(d). If they file an application in the United States within six months of filing their foreign trademark registration application and provides a statement that they have a bona fide intention to use the mark in commerce, Section 44(d) allows them to secure priority in the United States from the date of their foreign application, before the official filing date on their U.S. application. See 15 U.S.C. § 1126(d).

The defendant is the exclusive licensee of the Defend Paris Rifle Mark by virtue of a January 7, 2014 license agreement entered into with Freedom. <u>See</u> Ohebsion Decl. ¶ 5; Ecoff Decl. Ex. A. The defendant sells products under the Defend Paris Rifle Mark, and it claims that it has used the mark in commerce "at all relevant times." Ohebsion Decl. ¶ 11.

In addition to the three registered trademarks discussed above, the plaintiff has filed an application with the USPTO for a standard character mark consisting of the words "DEFEND PARIS" ("Defend Paris Character Application") on an intent-to-use basis. Compl., Ex. D; <u>see also</u> USPTO, TSDR Case Viewer, Case ID 86437307, <u>Documents – Application</u>, http://tsdr.uspto.gov (last visited on May 25, 2020). The application was filed on December 4, 2013, but the USPTO suspended action on the application on September 22, 2014. <u>See</u> <u>id.</u>, <u>Documents – Suspension Letter</u>, http://tsdr.uspto.gov (last visited on May 25, 2020.

**III.**

The defendant first moves for summary judgment dismissing the plaintiff's claim for trademark infringement under the Lanham Act.

**A.**

The Lanham Act prohibits any person "without the consent of the registrant" from "us[ing] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection

9

with the sale, offering for sale, distribution, or advertising of any goods or service on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim for a trademark "a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent." 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406–07 (2d Cir. 2005) (internal citation, alteration, and quotation marks omitted).

Under the Lanham Act, registration of a trademark constitutes "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration . . . ." 15 U.S.C. § 1115(a); see also Blue Planet Software, Inc. v. Games Int'l, LLC, 334 F. Supp. 2d 425, 435-36 (S.D.N.Y. 2004).[3] Once the USPTO issues a registration, the

---

[3] The presumption of validity established by registration may be rebutted if the party challenging the validity of the mark "prov[es] any legal or equitable defense or defect[.]" 15 U.S.C. § 1115(a). There are no substantiated allegations on this motion for summary judgment that the marks at issue in this case suffer from any defect or that one party may challenge

trademark owner possesses a right of priority that commences upon the filing date of the application, or, in the case where a trademark application was first filed in a foreign treaty country, upon the filling date of the foreign application. <u>See</u> 15 U.S.C. §§ 1057(c) and 1126(d). An owner's rights in a registered trademark therefore will "trump those of anyone who, prior to filing, had not (1) used the mark, (2) filed an application with the PTO to register the mark, which is pending or has resulted in registration, or (3) filed a foreign application to register the mark and filed an application under Section 44(d) to register the mark in the United States, which is pending or has resulted in registration." <u>De Beers LV Trademark v. DeBeers Diamond Syndicate</u>, 440 F. Supp. 2d 249, 266 (S.D.N.Y. 2006) (citing 15 U.S.C. § 1057(c)).

Once the possessor establishes a valid mark entitled to protection, the plaintiff must prove the "key element" of a trademark infringement suit, which is "that there is a likelihood of confusion or, in other words, that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." <u>Gruner + Jahr USA Publ'g v. Meredith Corp.</u>, 991 F.2d 1072, 1077 (2d Cir.

---

the validity of the opposing party's marks by invoking some equitable defense.

1993); see also VIDIVIXI, LLC v. Grattan, 155 F. Supp. 3d 476, 480 (S.D.N.Y. 2016). The ultimate question whether there is a likelihood of confusion is a question of law. See Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 743 (2d Cir. 1994). The question is appropriate for resolution on a motion for summary judgment "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 478 (2d Cir. 1996).

**B.**

The plaintiff has failed to demonstrate that his rights in the Defend Brooklyn Rifle Mark, the Defend Brooklyn Shield Mark, and the Defend Paris Mark Application trump the defendant's rights in the Defend Paris Rifle Mark.

The defendant's Defend Paris Rifle Mark was registered with a priority date of November 26, 2013. Ecoff Decl. Ex. A. Therefore, in order to demonstrate that the plaintiff's marks trump the defendant's mark, the plaintiff must show that, prior to that date, the plaintiff had (1) used its marks in commerce, (2) applied for registration for its marks before the USPTO, regardless of whether these applications resulted in actual registration, or (3) filed a foreign application to register the mark and filed an application under Section 44(d) to register the mark in the United States, regardless of whether these applications resulted in actual registration. 15 U.S.C.

§ 1057(c). The plaintiff filed the applications for registration of the Defend Brooklyn Rifle Mark, the Defend Brooklyn Shield Mark, and the Defend Paris Character Mark on March 14, 2014, October 28, 2014, and December 4, 2013 respectively. Compl. Exs. B-D. These dates are all later than the defendant's Defend Paris Rifle Mark's priority date of November 26, 2013, and the plaintiff does not allege that he has filed any foreign applications for these marks.

Therefore, the plaintiff can demonstrate priority for his three later-registered marks only by demonstrating that the marks were used in commerce prior to the defendant's mark. That showing requires the plaintiff to prove that "the mark was used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). This use must be "deliberate and continuous, not sporadic, casual, or transitory." Id. (quoting La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271-72 (2d Cir. 1974) (Friendly, J.)).

The plaintiff has presented no evidence that his three later-filed marks were used in commerce prior to the registration of the defendant's Defend Paris Rifle Mark because

13

the plaintiff cannot provide any evidence of a history of sales, purchases, advertising, or any other evidence that would demonstrate "deliberate and continuous" use of the plaintiff's marks in commerce. See Gameologist Grp., LLC v. Sci. Games Int'l, Inc., 838 F. Supp. 2d 141, 155 (S.D.N.Y. 2011) (finding that an inability to provide documentation of sales or transactions or of widespread advertising precluded a finding of use in commerce), aff'd. 508 F. App'x 31 (2d Cir. 2013).[4]

Because the plaintiff has failed to raise a genuine issue of material fact that he has used the Defend Brooklyn Rifle Mark, the Defend Brooklyn Shield Mark, and the Defend Paris Character Mark in commerce, he has failed to demonstrate that those three marks have priority over the Defend Paris Rifle Mark and that the marks are entitled to protection. Accordingly, the defendant is entitled to summary judgment dismissing the plaintiff's claims that the defendant is infringing on these three marks.

The only mark for which the plaintiff has sufficiently demonstrated that his mark trumps the defendant's mark is the plaintiff's Defend Brooklyn Character Mark, which has a registration date of October 4, 2005.

---

[4] With respect to the plaintiff's Defend Paris Character Mark, the plaintiff filed his application on an intent-to-use basis. See USPTO, TSDR Case Viewer, Case ID 86437307, Documents – Application, http://tsdr.uspto.gov (last visited May 25, 2020). Therefore, there is not even any allegation of prior use in commerce.

## C.

In any event, the defendant is entitled to summary judgment dismissing the plaintiff's claim that the defendant is infringing on all of the plaintiff trademarks because as a matter of law, there is no likelihood of confusion between the defendant's mark and the plaintiff's marks.

In Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961), Judge Friendly listed eight non-exclusive factors that courts should look to in order to determine whether there is a likelihood of confusion between different marks. These factors are

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009). The Court of Appeals has further instructed that

> the Polaroid factors are not, of course, "exclusive" and should not be applied "mechanically." No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand. But it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why. The steady application of Polaroid is critical to the proper

15

> development of trademark law, for it is only when the
> Polaroid factors are applied consistently and clearly
> over time that the relevant distinctions between
> different factual configurations can emerge.

Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 400 (2d

Cir. 1995) (citations omitted). When the likelihood of confusion

is in doubt, courts may resolve the issue in favor of the senior

user. See Brockmeyer v. The Hearst Corp., No. 01-cv-7746, 2002

WL 1402320, at *8 (S.D.N.Y. June 27, 2002) (collecting cases).

The plaintiff bears the burden of demonstrating likelihood of

confusion in the application of the Polaroid test. See Nabisco,

Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000)

(internal citation omitted).

### 1.

Other than the second factor, similarity of the marks, the

analysis of the Polaroid factors is the same for all of the

plaintiff's marks and can be analyzed together.

The first Polaroid factor, the strength of the marks, is

neutral. This factor encompasses two concepts: 1) whether the

plaintiff's marks possess "inherent distinctiveness," which is

strongest when the mark is "arbitrary or fanciful in relation to

the products (or services) on which [it is] used," and 2)

whether the mark has "acquired distinctiveness" or "secondary

meaning." See Virgin Enters. v. Nawab, 335 F.3d 141, 147-48 (2d

Cir. 2003). The plaintiff's marks are "inherently distinctive"

because they have no intrinsic relationship, descriptive or suggestive, with the plaintiff's product – clothing items. See, e.g., id. at 148-49. However, the plaintiff has failed to demonstrate any evidence of consumer recognition, fame, or sales, that would establish acquired distinctiveness. The first factor is therefore neutral. See Gameologist Grp., 838 F. Supp. 2d at 157-60 (weighing the weakness in demonstrating acquired distinctiveness heavily against the plaintiff and concluding that despite a relatively strong showing on inherent distinctiveness, this Polaroid factor is "at best neutral" for the plaintiff).

The third factor, competitive proximity, favors the defendant. This factor asks "to what extent the two products compete with each other," taking into account two elements, the "market proximity and geographic proximity." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 134 (2d Cir. 2004). On the one hand, both the plaintiff and the defendant claim to sell clothing, which weighs in favor of market proximity. On the other hand, the plaintiff alleges that he sells clothing online and through a "flagship clothing boutique" in New York, whereas the defendant sells clothing online only. Compl. ¶¶ 9, 17. Moreover, the fact that the defendant only sells clothing "of French origin or made in France" indicates that the defendant targets different customers from those targeted by the

plaintiff. Ecoff Decl. Ex. A. The difference in the channels of trade, combined with the different target audiences, does not support a finding of competitive proximity. See, e.g., New Look Party, Ltd. v. Louise Paris, Ltd., No. 11-cv-6433, 2012 WL 251976, at *7 (S.D.N.Y. Jan. 11, 2012) (noting that the difference in sale channels "weighs heavily against a finding of likelihood of confusion"). Further, the plaintiff has offered no evidence in support of a sustained history of sales, which further favors the defendant on this factor.

The fourth factor does not apply in this case because the plaintiff and the defendant operate in the same business – selling clothing and related apparel – and there is therefore no gap to bridge. See Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 387 (2d Cir. 2005) (finding the factor irrelevant where the parties are in competitive proximity and there is no gap to bridge).

The fifth factor favors the defendant because there is no proof of actual confusion. Evidence of actual confusion, while not necessary, is particularly relevant to the Polaroid factors analysis. See Virgin Enters., 335 F.3d at 151. It is significant that even though the plaintiff and the defendant currently sell similar merchandise, there is no evidence of actual confusion. The plaintiff has failed to produce any evidence supporting his allegation of actual confusion on the part of customers. See

18

Gameologist Grp., 838 F. Supp. 2d at 162-63 (holding this factor in favor of the defendant given the plaintiff's failure to offer evidence)

The sixth factor, good faith of the defendant, favors the defendant. "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Bacardi, 412 F.3d at 388. The plaintiff has failed to offer any facts to support its claim that the defendant is attempting to reap the goodwill and reputation of the plaintiff's products. There is no evidence in this case of the plaintiff's goodwill or reputation that the defendant could exploit at all, which weighs against the plaintiff. See Major League Baseball Props. v. Opening Day Prods., 385 F. Supp. 2d 256, 268 (S.D.N.Y. 2005) (lack of evidence of "any reputation or goodwill" upon which the defendant "could possibly have hoped to capitalize" weighed against finding of bad faith); Gameologist Grp., 838 F. Supp. 2d at 163 (same). The Second Circuit Court of Appeals has "never held adoption of a mark with no knowledge of a prior similar mark to be in bad faith even in the total absence of a trademark search[.]" Bacardi, 412 F.3d at 388. There is simply no evidence that the defendant acted in bad faith when it executed the license agreement with Freedom for the Defend Paris Rifle Mark.

19

Neither party produced any evidence on the quality of the defendant's products or the sophistication of the purchasers. The seventh and eighth factors are thus neutral in this case.

**2.**

The second factor, similarity of the marks, requires separate analysis for each of the plaintiff's marks because the plaintiff's marks are visually distinct. This factor "attempts to discern whether the similarity of the marks is likely to cause confusion among potential customers." <u>Malletier v. Burlington Coat Factory Warehouse Corp.</u>, 426 F.3d 532, 537 (2d Cir. 2005). The Court of Appeals has instructed that a court must not engage in a mere side-by-side visual comparison of the marks but "must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and 'the totality of factors that could cause confusion among prospective purchasers.'" <u>Id.</u> (quoting <u>Gruner + Jahr</u>, 991 F.2d at 1078).

With respect to the comparison between the plaintiff's Defend Brooklyn Character Mark and the defendant's Defend Paris Rifle Mark, the similarity analysis favors the defendant. Although the two marks do possess some textual similarity, in that both use the word "Defend" followed by the name of a place, it is unlikely that an ordinary customer viewing the two marks would place more emphasis on the word "Defend" rather than the

20

name of the place after that word. See Nabisco, 220 F.3d at 46
(finding that the "DENTYNE ICE" and "ICE BREAKERS" marks are at
best "marginally similar because of the common use of 'Ice'" but
that other factors supported a finding of dissimilarity).
Moreover, the plaintiff's mark is a character-only mark and the
defendant's mark includes designs and arrangements. There is
therefore no similarity between the marks that would cause
confusion.

The plaintiff's Defend Brooklyn Shield Mark also possesses
little similarity to the defendant's Defend Paris Rifle Mark.
Visually, the design, overall shape, and word placement is
completely different between the two marks, which also favors
the defendant. See Gameologist Grp., 838 F. Supp. 2d at 160-61.

With respect to the plaintiff's Defend Brooklyn Rifle Mark,
this factor presents the closest case of the plaintiff's marks
because of the similar designs between the plaintiff's Defend
Brooklyn Rifle Mark and the defendant's Defend Paris Rifle Mark.
Nevertheless, this factor favors the defendant. Although there
are some similarities between the marks such as the images of
rifles, the stylized "DEFEND" characters, and the positioning of
the texts in relation to the rifle image, there are important
differences, such as the details of the rifle image, the
direction in which the rifles are pointing, the font and size of
the texts, and most importantly, the difference between the

21

second word in the marks, "Brooklyn" and "Paris". See Nabisco, 220 F.3d at 46. When the two rifle marks are viewed through "a contextual analysis, rather than a simple focus on whether simultaneous viewing is likely to cause confusion," it is clear that the marks are dissimilar in important ways, particularly in view of the complete lack of evidence that the plaintiff has supplied in this case attesting to the market conditions in which the plaintiff's business operates. Malletier, 426 F.3d at 539. Moreover, any doubt as to similarity must be resolved in favor of the senior user, which is the defendant in this case because the defendant's Defend Paris Rifle Mark trumps the plaintiff's Defend Brooklyn Rifle Mark.

Based on the above application of the Polaroid factors, the defendant is entitled to summary judgment dismissing the plaintiff's claim for trademark infringement under the Lanham Act with respect to all of the plaintiff's marks. No factor in the analysis favors the plaintiff outright and most factors favor the defendant. Taken as a whole and particularly in light of the plaintiff's failure to produce any evidence in this case attesting to the market in which the plaintiff operates and the history of the plaintiff's business, and the plaintiff's failure to produce any evidence of actual confusion or bad faith, there is no likelihood of confusion between the plaintiff's marks and the defendant's mark.

The defendant's motion for summary judgment dismissing the plaintiff's Lanham Act trademark infringement claim is **granted**.

## IV.

### A.

The defendant moves for summary judgment against the plaintiff's claims for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and trademark infringement and unfair competition under New York common law.

For the same reasons that are stated above with respect to the plaintiff's claim for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114-16, the plaintiff has failed to demonstrate that his other remaining claims under the Lanham Act and common law can survive summary judgment. See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 206 F. Supp. 3d 869, 900 n.5 (S.D.N.Y. 2016) (noting that courts use substantially the same standard for claims for trademark infringement under the Lanham Act; false designation of origin under the Lanham Act; trademark infringement under New York common law; and unfair competition under New York common law). Therefore, the defendant's motion for summary judgment is **granted** dismissing the plaintiff's claims under the Lanham Act, 15 U.S.C. § 1125(a) as well as the plaintiff's claims for trademark infringement and unfair competition under New York common law.

**B.**

Finally, the defendant moves for summary judgment
dismissing the plaintiff's claim for unjust enrichment. In order
to establish a claim for unjust enrichment under New York law, a
plaintiff must establish: "(1) defendant was enriched (2) at
plaintiff's expense, and (3) that it is against equity and good
conscience to retain what is sought to be recovered." Clark v.
Daby, 751 N.Y.S.2d 622, 623 (App. Div. 2004) (alteration and
quotation marks omitted).

The plaintiff has failed to establish an unjust enrichment
claim. Nowhere in the record does the plaintiff show any
evidence relating to the defendant's sales, and there is a
complete lack of evidence as to whether any of the defendant's
gains have been at the plaintiff's expense. Moreover, because
the defendant's motion for summary judgment on the plaintiff's
trademark claims is granted and because "without a viable
underlying claim of illegality, an unjust enrichment claim 'must
be dismissed,'" the defendant's motion for summary judgment on
the plaintiff's claim for unjust enrichment is also without
merit. In re Interest Rate Swaps Antitrust Litig., 261 F. Supp.
3d 430, 500 (S.D.N.Y. 2017) (quoting Kramer v. Pollock-Krasner
Found., 890 F. Supp. 250, 257 (S.D.N.Y. 1995)). The motion for
summary judgment dismissing the plaintiff's claim for unjust
enrichment is **granted.**

## CONCLUSION

The Court has considered all of the issues. To the extent not specifically addressed above, any remaining issues are either moot or without merit. For the reasons explained above, the defendant's motion for summary judgment is **granted**. The Clerk is directed to enter judgment in favor of the defendant and against the plaintiff. The Clerk is also directed to close all pending motions and to close this case. Chambers will mail a copy of this opinion to the plaintiff.

**SO ORDERED.**

**Dated:**      **New York, New York**
             **July 27, 2020**            _____/s/ John G. Koeltl_
                                          **John G. Koeltl**
                                  **United States District Judge**

25